## Staunton.

# AMERICAN MUTUAL LIABILITY INSURANCE COMPANY AND McCORKLE LUMBER COMPANY, INC. v. ELMER HAMILTON.

### September 23, 1926.

1. WORKMEN'S COMPENSATION ACT—*Void Judgment—Collateral Attack.*— A void award of the Industrial Commission is assailable either by direct attack, upon appeal, or collaterally in a chancery suit.

2. WORKMEN'S COMPENSATION ACT—*Award—Relation of the Commission to the Award.*—After an award, and during the whole compensation period applicable to the injury in question, the relation of the Commission to the award is similar to that of a court to a judgment during the term at which it is rendered.

3. WORKMEN'S COMPENSATION ACT—*Agreement of the Parties Equivalent to an Award—Compliance with Section 25 of the Workmen's Compensation Act (Code of 1924, Section 1887 [25]) Requiring that Claim Shall be Filed within One Year following the Accident—Case at Bar.*—The instant case was a collateral attack upon an award of the Industrial Commission on the ground that the employee failed to file claim for compensation with the Industrial Commission within one year following the accident as provided by section 25 of the act (Code of 1924, section 1887 [25]). The Commission found that the employer had assumed direction of medical and hospital attention to the claimant and had paid a considerable portion of the expense of these things; that the employer had stated to the employee that he would be taken care of by the compensation insurance; that the employer had reported the accident which occurred on June 18, 1920, to the insurance carrier in August, 1920; that there had been payment of various sums, which was not definitely shown, nor the exact purpose of the payments; the reliance by employee that he would be taken care of during disability; and that failur eon his part to file a claim for compensation sooner was because he thought the case was being handled according to the compensation law and because he relied on the statement made by his employer. On these conclusions of fact, the Commission held as a conclusion of law that the agreement of the parties was equivalent to an award, and that the statute of limitation defense did not apply. The Supreme Court of Appeals, however, was not impressed with this legal conclusion of the Commission.

4. LIMITATION OF ACTIONS—*Jurisdiction—Estoppel.*—Independently of statutes of limitation, or of jurisdiction as determined by statutes fixing the time within which applications for hearings shall be filed, in a court of equity, when one by his acts, through representations or admissions, or by his silence or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts upon such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, estoppel arises.

5. WORKMEN'S COMPENSATION ACT—*Compliance with Section 25 of the Workmen's Compensation Act (Code of 1924, Section 1887 [25]) Requiring that Claim be Filed One Year following the Accident—Fraud and Deceit—Case at Bar.*—In the instant case, a chancery suit attacking the validity of an award of the Industrial Commission, because the claim was not filed within one year after the accident as provided by section 25 of the workmen's compensation act (Code of 1924, section 1887 [25]), not only did the insurance carrier pay doctor and hospital bills, but there were representations by the employer which justified the claimant in the belief that his claim had been filed. This was equivalent to a finding of fraud in law.

6. ESTOPPEL—*Equitable Estoppel—Estoppel in Pais—General Rule.*—The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais,* is that when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon these statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby.

7. ESTOPPEL—*Elements.*—In order to constitute an estoppel there must have been a representation or concealment of material facts with knowledge of the true facts unless the party making it was bound to know the facts or his ignorance of them was due to gross negligence. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. The representation must have been made with the intention that the other party should act on it; but the place of intent will be supplied by gross and culpable negligence on the party sought to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. The representation or concealment must be proved to have been the inducement to the action of the other party. The party claiming the estoppel must have been misled to his injury.

8. ESTOPPEL—*Knowledge of the Party to be Estopped.*—The representation or concealment relied on to sustain an estoppel must have been made

---

Opinion.

---

with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence or otherwise involves gross culpability, as where he is consciously ignorant of the facts at the very time of professing full knowledge of them.

9. Workmen's Compensation Act—*Limitation of Actions—Estoppel.*— The doctrine of estoppel may be invoked in a proper case to defeat the running of the statute of limitations.

10. Workmen's Compensation Act—*Compliance with Section 25 of the Workmen's Compensation Act (Code of 1924, Section 1887 [25], Requiring that Claim Shall be Filed within One Year following the Accident—Estoppel—Case at Bar.*—The instant case was a collateral attack upon an award of the Industrial Commission on the ground that the employee failed to file claim for compensation with the Industrial Commission within one year following the accident as provided by section 25 of the act (Code of 1924, sec. 1887 [25]). The Commission found that the employer had assumed direction of medical and hospital attention to the claimant and had paid a considerable portion of the expense of these things; that the employer had stated to the employee that he would be taken care of by the compensation insurance; that the employer had reported the accident which occurred on June 18, 1920, to the insurance carrier in August, 1920; that there had been payment of various sums, the amount of which was not definitely shown nor the exact purpose of the payments; and the reliance by the employee that he would be taken care of during disability; and that failure on his part to file a claim for compensation sooner was because he thought the case was being handled according to the compensation law and because he relied on the statement made by his employer.

*Held:* That the employer and the insurance carrier by their conduct were estopped to assert in this suit that the claim was not filed within the time prescribed by law.

Appeal from a decree of the Circuit Court of Dickenson county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. H. Rives, Jr., S. S. P. Patteson,* for the appellee.

*G. Mark French, S. H. & Geo. C. Sutherland,* for the appellant.

Chichester, J., delivered the opinion of the court.

This is a suit in chancery in which the appellants, hereafter called complainants, are collaterally attacking an award of the Industrial Commission of Virginia made on the 27th day of February, 1924, in favor of Elmer Hamilton, hereafter called claimant, upon his application for a hearing for alleged permanent injury received while in discharge of his duties to his employer.

The McCorkle Company, lumber manufacturers, of Dickenson county, Va., was the employer, American Mutual Liability Insurance Company was the insurance carrier, and Elmer Hamilton was the employee. An appeal was taken from the award of the Industrial Commission to the Circuit Court of Dickenson county and the award affirmed in every particular.

The complainants failed to appeal from the judgment of the circuit court, but later filed their bill in chancery attacking the award of the Industrial Commission and the judgment of the court upon appeal from the award, collaterally, declaring it to be void upon the ground that the Industrial Commission had no jurisdiction to hear the application of claimant for the reason that the application for a hearing was not filed with the Commission within one year from the date of the injury, as required by section 25 of the workmen's compensation act (Acts 1918, c. 400), and praying for an injunction to enjoin and restrain claimant, his agents, etc., from issuing any execution, etc., on the award.

[1] The reason given for the failure to appeal from the judgment of the circuit court is that the clerk of the court failed, as directed by the final order, to notify counsel for complainants of the judgment within thirty days of the entry thereof and that counsel did not know judgment had been entered in the time with-

in which an appeal could have been taken from the judgment. This is immaterial however, as the judgment, if void, as is claimed, is assailable either by direct attack, upon appeal, or collaterally in the instant proceeding.

The contention of complainants as stated in their bill is that the Industrial Commission found as a fact that "it is beyond question that the application for hearing was filed over two years after the accident," and that, this being true, under section 25 of the workmen's compensation act, the Commission was without jurisdiction to hear the application, the claim being "forever barred" by the limitation provided by the statute, and it is pointed out that this defense of the statute of limitations was made before the Industrial Commission and before the circuit court upon appeal from the award. That is to say, it is contended that when the Commission found as a fact that more than two years had elapsed between the date of the injury and the application for a hearing the claimant was forever barred from a hearing, the Commission was deprived of jurisdiction to hear the application and any award of the Commission or judgment of a court upon appeal in favor of the claimant was null and void.

There were three defenses filed by the insurance carrier before the Industrial Commission.

1. That there was no accident arising out of and in the course of the employment.

2. Failure to file notice with the employer within thirty days following the accident. (Sec. 23 of the Act.)

3. Failure to file claim for compensation with the Commission within one year following the accident. (Sec. 25 of Act.)

The first defense was disposed of by the Commission

upon some conflict of evidence by the finding, as a fact, that there was an accident and that it arose out of and in the course of claimant's employment, and that it occurred June 18, 1920.

The second defense was disposed of by the Commission by the finding, as a fact, from the evidence that McCorkle knew of the accident within three weeks beyond the thirty days following the accident, and that the claimant's immediate superior knew of it in a much less time, and that in any event "no prejudice to the employer's right was shown to have resulted, and the defense is without merit." Section 23 of the workmen's compensation act declares: "Every injured employee or his representative shall immediately on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident, and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the terms of this act prior to the giving of such notice unless it can be shown that the employer, his agent or representative, had knowledge of the accident, or that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity, or the fraud or deceit of some third person, but no compensation shall be payable unless such written notice is given within thirty days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice, and the Commission is satisfied that the employer has not been prejudiced thereby."

It is not necessary to refer again to these defenses. The case here rests upon whether the award was void for the reason alleged in the third ground of defense, *supra*.

The Commission found as a fact that the injury occurred on June 18, 1920, and that the claim was not filed with the Commission until June 1922, two years later.

Section 25 of the workmen's compensation act declares: "The right to compensation under this act shall be forever barred, unless a claim be filed with the Industrial Commission within one year after the accident, and, if death results from the accident, unless a claim therefor be filed with the Commission within one year thereafter."

The contention of the complainants is that this section is not a statute of limitation in the ordinary sense, nor is it subject to the qualifications of section 5825 of the Code, as the statutes of limitation in chapter 238 are, but that compliance with the requirement to file the claim within one year of the accident, etc., is jurisdictional, and that if for any reason the claim is not filed within the year, any award by the Industrial Commission upon such a claim is void, whatever the reason for the failure to file claim within the time prescribed.

The claimant met this contention by the assertion:

That in this case an agreement was entered into within twelve months of the accident by the insurance company, the employer and the claimant and this agreement was filed before the Industrial Commission and was written upon forms furnished by the Industrial Commission of Virginia. That an agreement, under the industrial law, is the same and answers the purpose of a claim formally filed.

That the claimant was prevented from filing his claim by the fraudulent practices of the employer and the insurance company. That by the present Virginia statute of limitations fraud stops the running of the statute in all cases.

That the defendants are estopped from claiming the bar of the statute of limitations by their conduct in telling the claimant that they were working out his case under the compensation law, in paying his hospital expenses, in paying him compensation, in furnishing him with settlement sheet and by other acts inconsistent with their not relying upon the bar of the statute.

Upon this clear cut issue the Commission held: 1st. That the course of conduct of the parties was equivalent to an agreement having been entered into for the payment of compensation, and that, when an agreement has been entered into between the parties and an award issued thereon, this has all the binding effect of an award issued after formal hearing before the Commission, and while no formal agreement was entered into in this case the Commission was of opinion, under the peculiar circumstances of the case, it should be held to constitute an agreement such as is contemplated by the act. The Commission then concludes: "If this be true, then the statute of limitation defense does not apply. It is a well settled principle of the compensation law that:

[2] "After an award, and during the whole compensation period applicable to the injury in question, the relation of the Commission to the award is similar to that of a court to a judgment during the term at which it is rendered.

"See *Thompson* v. *Towle,* 98 Conn. 738, 120 Atl. 503.

"A total disability may entitle a claimant to compensation for a period of 600 weeks, under the provisions of section 30. A partial disability may entitle him to compensation for 300 weeks, under the provisions of section 31."

2nd. It held, that if it was not correct in the view

that the agreement in this case was equivalent to an award, the claim should not be barred for the reason that under the facts of this case the doctrine of estoppel should be applied.

Before discussing the relative merits of the positions taken on the issue of the validity of the award, it is necessary to state the facts found to be true by the Commission bearing upon this issue.

As stated, the accident occurred on June 18, 1920. Claimant was getting an average wage of $30.00 a week, plus a bonus of $1.00 a day. Three days after the accident claimant went to see Dr. McNeer. Then he went to the hospital at Dante. In July he went to Richmond upon advice of McCorkle, the superintendent. He was accompanied to Richmond by S. V. McCorkle, brother of the superintendent. Shortly after the accident Mr. McCorkle told him he would get $10.50 a week and expenses. After he returned from Richmond he went to a hospital at Richlands and was operated on and this was done at the suggestion of McCorkle. Claimant paid part of his expenses to Richmond and his employer paid part. Claimant paid $75.00 to Dr. Williams for operating. He remained in the hospital sixteen days and returned home and remained two weeks. He then went to Clinchport and was operated on again, remaining in the hospital twenty-eight days. About February, 1921, he returned home and went to work for his former employer. He remained with the McCorkle Lumber Company three or four months and then went to work for another company. He received $3.20 a day after he returned to work, and then $3.25, later raised to $3.50 which he was getting at the date of the hearing when he was still suffering from partial incapacity. He never received any checks for compensation money

from the insurance company and has no recollection of signing a final receipt; that at one time he asked his employer if he was ever going to get any insurance money, and he said: "I don't know; we will have to wait until the insurance man gets here;" that he did get money along, but did not know where it was coming from; that he did not talk to the representative of the insurance company himself at all, but that he asked Mr. McCorkle if the representative of the company had come, and that he (McCorkle) replied that he was there and that he would talk to him himself; that he imagined that the money he had received from time to time was coming from the company, but did not think it was being paid him as compensation.

Claimant signed a final receipt on April 16, 1921, on the Industrial Commission's receipt form as follows:

"April 16, 1921.

"Received of the American Mutual Liability Insurance Company the sum of five hundred two dollars and twenty-five cents ($502.25) being the final payment of compensation law for all injuries received by me on or about the first day of May, while in the employ of McCorkle Lumber Company, making in all, with the payments heretofore received by me, the total sum of five hundred two dollars and twenty-five cents ($502.25) covering a period of_____weeks.

"My disability began on the first day of May, 1920, and I returned to work on the first day of March, 1921, at a wage of $24.00 per week.

"Subject to approval and review by the Industrial Commission of Virginia.

(Signed) "ELMER HAMILTON,
"Witness:                                    "Nora, Virginia.
    "M. R. McCorkle,
        "Nora, Va."

The settlement included payment by the insurance company to employer of $502.00 hospital bills, and $175.00 compensation, at the rate of $10.00 per week, for 17½ weeks, although according to employer's own contentions, claimant had been disabled from somewhere near the middle of June, 1920, to February 20, 1921, a period of approximately eight months, or thirty-two weeks. All of this was done at the instance of the employer, and, therefore, properly a part of the charges against the insurance company.

The insurance carrier paid no money direct to claimant, but fully reimbursed the employer, and the manner by which the Industrial Commission finally found out that a settlement for partial disability had been made was that the receipt above referred to was mailed to the Industrial Commission by mistake of the employer who intended to mail it to the insurance carrier. And later when payments to claimant ceased after seventeen and one-half weeks, he wrote the Industrial Commission inquiring what amounts had been paid by the insurance company to McCorkle Company during 1920 and 1921. (All of which shows that the claimant expected payments as long as he was incapacitated and that he thought the matter was being handled by the Industrial Commission.)

[3, 4] From the evidence bearing on the question under discussion thus summarized, the Commission concluded: 1. That the employer had assumed direction of the medical and hospital attention to claimant and payment of a considerable portion of the expenses of these things. 2. That employer had stated to employee that he would be taken care of by the compensation insurance the company was carrying. 3. Report by employer to the insurance carrier of the accident in August, 1920. 4. Payment of various

sums, amount of which is not definitely shown nor exact purpose of payments. 5. Reliance by employee that he would be taken care of during disability and failure on his part to file a claim for compensation sooner because he thought the case was being handled according to the compensation law, and because he relied on the statement made by his employer.

Upon reaching these conclusions of fact the Commission held as a conclusion of law, as heretofore stated, that the agreement of the parties was equivalent to an award, or if this position was not tenable that the complainants under the facts were estopped by their conduct to set up the contention that the claim for compensation was not filed before the Commission in time. (The award of the Commission, affirmed by the circuit court upon appeal, appears in the margin.\*)

We are not impressed with the first legal conclusion

---

\* An award will be entered in claimant's favor for compensation at the rate of $10.00 per week, from June 18, 1920, to February 20, 1921, inclusive, subject to a credit of 17½ weeks already paid.

Disability having been partial since February 20, 1921, the claimant, under the provisions of section 31, is entitled to half the difference in his wage previous to the accident and since. The testimony, furthermore, as set out in the findings of fact, clearly indicated that the claimant has not been able to do the work he did previous to the injury. His wage previous to the accident, as testified to by him, was $36.00 per week. His wage from February 20, 1921, until September 1, 1921 (which is the period claimant testified he worked for the McCorkle Lumber Company), was $19.20 a week. During this period, therefore, he is entitled to compensation at the rate of $8.40 per week, which is half the difference between his earnings at this time and before the accident. From September 1, 1921, to the date of the hearing, November 2, 1923, and continuing during the partial disability, the claimant is entitled to compensation at the rate of $7.50 per week, as his wage has been at the rate of $21.00 per week; the total payments, however, not to exceed a period of three hundred weeks from the date of injury.

An additional award will also be entered in claimant's favor for the $75.00 paid by him to Dr. Williams, for the amount paid by him to Dr. NcNeer and also the amount paid by him toward his expenses to Richmond.

The claimant having been represented at the hearing by G. Mark French, attorney, a fee of $150.00 will be paid the said G. Mark French out of the award herein directed.

The defendants will pay the costs.

of the commission, for reasons which it is not necessary to state here. We do, however, think that, accepting the conclusions of the Commission as to the facts proven as correct, that the conclusion that the doctrine of estoppel should be applied in this case is unassailable. The conduct of complainants throughout the transaction was well calculated to mislead an unlettered and an ignorant man, such as this claimant is shown to have been, and under the circumstances amounted to a legal fraud upon his rights. Independently of statutes of limitation, or of jurisdiction as determined by statutes fixing the time within which applications for hearing shall be filed, in a court of equity, when one by his acts, through representations or admissions, or by his silence or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts upon such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, estoppel arises. 21 C. J. 1113—Note 53 and cases cited.

We are cited by complainants to *Town of Leesburg* v. *Loudoun Nat. Bank,* 141 Va. 244, 126 S. E. 196, where it is said: "The statement of this proposition is sufficient to show that the point is well taken. It does not present the cases where the limitation, if relied on, must be specially pleaded. The remedy, because it is based solely upon the statute, is also limited thereby. As was said in *Commonwealth* v. *Deford,* 137 Va. 551, 120 S. E. 281, 284: 'The very right itself is accorded by the statute. As that statute is relied on, and the proceeding can be maintained only in accordance therewith, the limitation of time thereby prescribed is so incorporated in the remedy given as to make it an integral part of it, and hence makes it a condition precedent to the maintenance of the proceeding.

It is a special limitation prescribed by the same statute which creates the right. The distinction between statutes of limitation which bar rights which have once accrued and limitations of time which are an integral part of the statute creating the right is everywhere recognized, and as to this it is only necessary to cite one other Virginia case, *Dowell* v. *Cox*, 108 Va. 460, 62 S. E. 272, where it is held that the statutory requirement that an action for wrongful killing shall be brought within one year affects the right as well as the remedy, and can therefore be availed of by demurrer.'

"The court, then, had no jurisdiction to grant relief as to the taxes for the year 1919; and, this being jurisdictional, the question may be raised for the first time in this court."

But this case does not deal with the question of legal fraud and estoppel, nor do any of the cases which we are referred to.

In *Hill* v. *Supervisors*, 119 N. Y. 344-347, 23 N. E. 921, the court said, that where the statute creates a new cause of action: "The limitation of time is so incorporated with the remedy given as to make it an integral part of it, and the condition precedent to the maintenance of the action at all." *Rosin* v. *Lidgerwood Manufacturing Co.*, 89 App. Div. 245, 253, 86 N. Y. S. 49.

In *O'Esau* v. *Bliss Co.*, 188 App. Div. 385, 177 N. Y. S. 203, it is said: " 'The right to claim compensation under this chapter shall be forever barred,' says the statute, 'unless within one year after the injury   *   *   *   *   a claim for compensation thereunder shall be filed with the Commission.' Consol. Laws, c. 67, sec. 28. This is clearly a jurisdictional fact; without the filing of the claim within one year from the injury the Com-

mission is powerless to act, because the right to 'claim compensation' has been forever barred, and even the State Industrial Commission may not revive that claim sufficiently to give it jurisdiction to apply the doctrine of estoppel. What a court of equity might do in a case coming within the scope of an estoppel, which always involves the element of fraud or something which operates as a fraud (*Wilmore* v. *Flack*, 96 N. Y. 512, 520), it is not necessary now to inquire. The claimant worked for the employer for many months after the accident, during all of which time he was in the possession of all his mental faculties, as we must assume. He was bound to know the law, and this law required, as a condition precedent, that he should file his claim within a period of one year from the date of the accident. Having failed to do this the 'right to claim compensation under this chapter' was at an end; it was beyond the jurisdiction of the State Industrial Commission, and its holding that the employer and insurance carrier were estopped is utterly without force or effect. No evidence of fraud appears in the record; * * * ."

In this case there was no conduct on the part of the employer amounting to fraud, as the court expressly says, and there was no reason for the application of the doctrine of estoppel. It is said: "No evidence of fraud appears in the record." The implication here is, that if the employer was guilty of fraud, the doctrine would apply.

In *Twonko* v. *Rome Brass & Copper Co.* (1918), 224 N. Y. 265, 268, 120 N. E. 639, it is said: "The claimant had until July 20, 1915, to file his claim with the Commission. The last payment by the insurance carrier of any money for his benefit was on February 6, 1915. During a period, therefore, of five months,

the claimant knew that he was receiving no money upon his claim or by virtue of his statement given to Bow. The first letter from his lawyer to the commission is dated August 21, 1915.

"That the insurance carrier paid the doctors and the infirmary could not amount to estoppel without some representation by it justifying the claimant in a belief that his claim had been filed or would be filed with the Commission.

"The law stated that the right to compensation shall be forever barred unless within one year after the accident a claim for compensation shall be filed with the Commission. These plain provisions cannot be dispensed with by such evidence as we have in this case. (*Buckles* v. *State of New York*, 221 N. Y. 418, 117 N. E. 811.)

"The order of the appellate division should be reversed and the determination of the State Industrial Commission annulled and claim dismissed, with costs against the Industrial Commission in this court and in the appellate division."

Here the court held the doctrine of estoppel did not apply to that case, but for the reason that the employer made no representations justifying the claimant in the belief that his claim had been filed or would be filed with the Commission. In the instant case the Commission found, not only that the insurance carrier paid doctor and hospital bills, but that there were representations by the employer which justified the claimant in the belief that his claim had been filed, which, as we have seen, is equivalent to a finding of fraud in law.

The complainants contend that the Commission distinctly negatived fraud on the part of the parties by its findings. We have quoted the findings of the

Commission on the question and we do not so interpret them.

Under the circumstances of this case it makes no difference whether section 3578 of the Code applies or not. We base our concurrence in the view of the learned chancellor who heard this cause upon the application of the doctrine of estoppel to the facts here disclosed.

[6] As was said by Keith, P., speaking for this court in *C. & O. R. Co.* v. *Walker*, 100 Va. at p. 91, 40 S. E. 641: "The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais*, is that when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby." 4 Amer. & Eng. Decs. in Eq., 258.

[7] "In order to constitute an estoppel: '1. There must have been a representation or concealment of material facts. 2. The representation or concealment must have been with knowledge of the true state of facts, unless the party making it was bound to know the facts, or his ignorance of them was due to gross negligence. 3. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. 4. It must have been made with the intention that the other party should act on it; but the place of intent will be supplied by gross and culpable negligence on the party sought

to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. 5. The representation or concealment must be proved to have been the inducement to the action of the other party. 6. The party claiming the estoppel must have been misled to his injury.' 4 Amer. & Eng. Decs. in Equity, 268.

[8] "It may be stated, as a general rule, that the representation or concealment relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence or otherwise involves gross culpability, as where he is consciously ignorant of the facts at the very time of professing full knowledge of them."

[9] In *Kiser* v. *Clinchfield Corp.*, 139 Va. 451, 124 S. E. 271, Opinions Industrial Commission, 1923, the Commission held that the doctrine of estoppel may be invoked in a proper case to defeat the running of the statute of limitations.

[10] These principles, thus clearly enunciated, apply in every essential way to the facts of the case at bar as fixed by the finding of the Commission, and for the reasons assigned we feel that complainants, by their conduct, are estopped to assert here that the claim was not filed within the time prescribed by law, and we therefore are of opinion to affirm the decree of the trial court.

*Affirmed.*