935 F.2d 1286
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James M. HARPER, Administrator of Estate of Sharon A.
Harper, deceased, Plaintiff-Appellant,
v.
IVAC CORPORATION, Defendant-Appellee.
 No. 90-2208.
 United States Court of Appeals, Fourth Circuit.
 Argued April 9, 1991.
Decided June 25, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, District Judge. (CA-90-100-R)
 Fred Dempsey Smith, Jr., Fred D. Smith, Jr., P.C., Richmond, Va. (Argued), for appellant; James M. Minor, Jr., Paul R. Mack, Minor, Saunders, Cary & Patterson, Richmond, Va., on brief.
 Edwin Lewis Kincer, Jr., Mezzullo & McCandlish, Richmond, Va. (Argued), for appellee; Beverly P. Sisk, David D. Hopper, Mezzullo & McCandlish, Richmond, Va., on brief.
 E.D.Va.
 DISMISSED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal is from the grant of summary judgment by the court below to IVAC Corporation ("IVAC" or "appellee") on a products liability case arising from the death of appellant's decedent Sharon A. Harper. Two principal issues are presented. The first is a challenge to the subject matter jurisdiction of the court that was made for the first time before this court.[1] The second is an assertion of error on the part of the court below in granting summary judgment to IVAC.
 
 I.
 
 2
 In the 1970s, IVAC developed a device to control the infusion of medications by intravenous ("IV") application. The device is mounted so that the IV tubing from the bag supplying the medication passes through the device and thence into the vein of the patient. Its purpose is to regulate the rate of flow of the medication through the IV tubing. The device operates properly when the small access door to the device is closed and clamped down after the tubing has been properly placed in it. If the door is opened while the IV tubing is in place, there can result a "free flow" of the medication into the patient.
 
 
 3
 In this case, appellant's decedent, Sharon A. Harper ("Harper"), was a patient in the Naval Regional Medical Center in Portsmouth, Virginia. On May 18, 1983, she was to be moved from one room to another. Commander Pierce, a Navy nurse, was basically in charge of the patient, but the move was carried out by two Navy corpsmen. Harper's IV was controlled by an IVAC device. At some point in the process, Commander Pierce was advised that Harper appeared to be in distress. The IVAC device was found to have been disconnected and turned off, and the medication was flowing unrestricted. The manually controlled roller clamp, which is located on the IV feed line and is used to restrict the flow of the medicine when the IVAC device is not in use, was adjusted to its widest setting, allowing maximum flow through the tube. On May 27, 1983, Harper died from the overdose of lidocaine she received when the IVAC device was disconnected.
 
 
 4
 The available evidence indicates that one of the corpsmen disconnected the IVAC device while moving Harper. Prior to being disconnected, the IVAC device had apparently functioned in a completely normal way.
 
 
 5
 In granting summary judgment, the district court made the following findings in relation to the question of proximate cause:
 
 
 6
 The uncontroverted evidence shows that medical personnel were generally aware of the dangers of free-flow, and that corpsmen were not allowed to alter or disconnect medicated IVs. The evidence conclusively shows that Corpsman Holdsbrook acted contrary to hospital policy, and in an unpredictable and dangerous manner, when he arbitrarily disconnected an IV controller without authority or assistance. His actions did not constitute misuse of the machine, but a wanton decision that the machine was completely unnecessary. IVAC Corporation has no duty to prevent their machine from being disabled in this fashion.
 
 
 7
 (Joint Appendix p. 540.)
 
 II.
 
 8
 This court must first address the jurisdiction issue. The resolution to this question is found in the interplay of several Commonwealth of Virginia statutes. The first of these is the general statute of limitations.[2] The second is the Virginia version of Lord Campbell's act, or the wrongful death statute enacted in the Commonwealth.[3] The third is the Virginia statute which permits the general refiling of a claim within six months of the time of the taking of a nonsuit, with the period of time during which the nonsuited action was pending not to be included in the computation of the bar of the statute of limitations.[4]
 
 
 9
 The procedural evolution of the case in the court below gives the answer to the question of subject matter jurisdiction. Harper received the overdose of lidocaine on May 18, 1983, and died on May 27, 1983. The plaintiff-administrator filed a medical malpractice claim under the Federal Tort Claims Act on November 13, 1984. This claim was settled on October 3, 1985. On May 17, 1985, the plaintiff filed a wrongful death action in the Circuit Court for the City of Richmond. This case was filed ten days before the expiration of the right to bring the suit under Sec. 8.01-50, which requires that wrongful death actions be brought within two years from the date of death. The state court motion for judgment against IVAC Corporation was served on September 23, 1985. The plaintiff took a voluntary nonsuit of the state court action on October 17, 1989, and on February 22, 1990, the plaintiff filed this action in the United States District Court.
 
 
 10
 The period during which the state court action was pending, from May 17, 1985, through October 17, 1989, is not to be included in the calculation under Virginia Code Sec. 8.01-244(B) in determining the date on which the statute of limitations bars further proceedings. IVAC contends that the appellant, under Sec. 8.01-244(B), had ten days in which to refile his suit in order to escape the limitation contained in that statute. The appellant, relying on Virginia Code Sec. 8.01-229(E)(3), argues that he had six months from the date of nonsuit within which to refile his action.
 
 
 11
 The courts have long recognized a distinction between a general statute of limitations and a limitation imposed by the terms of a statute which grants a right of action, sometimes referred to as a special limitation. At common law, there was originally no cause of action for a death by wrongful act. This was changed with Lord Campbell's Act in 1846, which granted to the decedent's survivors the right to bring an action against the tortfeasor allegedly causing the death. This statute came, of course, to the Commonwealth of Virginia, and has been incorporated in the Code of Virginia for many years. Significantly, the statute itself now contains a two year limitation period for the bringing of the action.
 
 
 12
 Commentators generally have asserted that a general statute of limitations limits the remedy to the period within which the limitation operates, whereas the special statute of limitations is a bar not only to the remedy but also to the right to bring the action. The general rule is that the limitation imposed by a statute granting a right to bring an action is a jurisdictional part of that statute, whereas the general statute of limitations, applying generally to actions not otherwise delimited, is simply a limitation on the remedy. This distinction has been long followed in the Commonwealth of Virginia, see American Mutual Liab. Ins. Co. v. Hamilton, 145 Va. 391, 135 S.E. 21 (1926), and was most recently enunciated in Dodson v. Potomac Mack Sales & Service, Inc., 400 S.E.2d 178 (Va.1991). In the Dodson case, the Supreme Court of Virginia commented that, because an action for wrongful death did not exist in common law, "the cause of action as well as the right to enforce it were created by statute." 400 S.E.2d at 180. This is directly supported by Sec. 8.01-244(B) which states:
 
 
 13
 Every action under Sec. 8.01-50 shall be brought by the personal representative of the decedent within two years after the death of the injured person. If any such action is brought within such period of two years after such person's death and for any cause abates or is dismissed without determining the merits of such action, the time such action is pending shall not be counted as any part of such period of two years and another action may be brought within the remaining period of such two years as if such former action had not been instituted.
 
 
 14
 It is obvious that the limitation contained in Sec. 8.01-244(B) is a limitation on the right to bring the action, rather than the limitation of a general statute of limitations on the remedy. Of course, this comports with the ancient view that a general statute of limitations defense could be waived by the defendant, and the plaintiff could go forward to pursue his remedy. However, where the right is created by statute, as in the wrongful death case, the limitation of two years is embraced as a bar against the right itself being pursued after the two year period.
 
 
 15
 Applying the rationale of the Dodson opinion, the court finds the appellant had ten days in which to refile his wrongful death action, not the six-month period provided by the nonsuit statute.
 
 
 16
 In his opposition to the appellee's motion to dismiss for lack of subject matter jurisdiction, the appellant asserts that his filing was timely based on Sec. 8.01-235 of the Code of Virginia.[5] Section 8.01-235 provides that a defense of the statutory limitations period must be set up by an affirmative defense "specifically set forth in a responsive pleading."
 
 
 17
 In considering Sec. 8.01-235 this court heeds the revisor's note to that section, which states:
 
 
 18
 Section 8.01-235 requires that any statute of limitations must be pleaded as an affirmative defense by the party claiming its benefit. As to statutorily created rights unknown to common law, e.g., wrongful death actions, this changes case law which required the party asserting such a right to plead that he had brought the action within the limitation period. To this extent[,] the section therefore repeals Branch v. Branch, 172 Va. 413, 2 S.E.2d 327 (1939).
 
 
 19
 As the note indicates, Sec. 8.01-235 was enacted to change the rule of law enunciated in Branch, where the Supreme Court of Virginia held that a failure affirmatively to plead in a wrongful death action that the action is brought within the limitation period was fatal, and that the requirement for such pleading was a jurisdictional matter.[6]
 
 
 20
 In essence, Branch reiterated the rule that the statute which prescribes a special limitation upon the right requires that there be an affirmative showing that the suit was brought within such time as might have been limited by the statute itself.
 
 
 21
 Section 8.01-235 was enacted to eliminate that requirement of specific pleading of a statute of limitations. It does not in any way affect the distinction between what is referred to in Branch as the "pure statute of limitations" and the statute of limitations prescribed in a statute which also grants the right. That distinction remains untouched, as is clearly indicated in the decision in Dodson.
 
 
 22
 Harper also asserts that an amendment passed by the 1991 General Assembly shows the clear intention of the legislature to apply Sec. 8.01-229(E)(3) to a wrongful death case as well as to the general run of cases affected by a statute of limitations. Although the amendment which will become effective on July 1, 1991, will probably overrule Dodson, it is not yet the law, and cannot be considered by this court.
 
 
 23
 For the foregoing reasons, the court concludes that the applicable statutes, including particularly the statute of limitations in the wrongful death act, gave to the appellants ten days from the date of nonsuit in which to refile their action. Since they did not do so, the court must grant the motion challenging the subject matter jurisdiction.
 
 III.
 
 24
 While this action of the court disposes of the case, the court considers it worthwhile to comment on the decision of the court below to sustain the motion for summary judgment. The court below examined all the evidence in the case and concluded first, that there were adequate warnings placed on the IVAC device, and second, that the intervention of what was referred to in the court below as a "wanton" act of negligence was the proximate cause of the injury, i.e., that there was an independent act of negligence which brought about the injury. An examination of the record reveals that these findings were clearly not erroneous. Though the appellant exerted the strongest possible efforts to overcome this hurdle, it is clear to the court that the decision reached by the court below is correct.
 
 
 25
 Because of the lack of subject matter jurisdiction, this case must be
 
 
 26
 DISMISSED.
 
 
 
 [1]
 Anyone fortunate enough to have had the late Judge Armistead Dobie as a professor will remember his hypothetical used to emphasize the ongoing obligation that a court has to insure that it properly has subject matter jurisdiction over a given case. As Professor Dobie taught, if the janitor comes into the back of the courtroom and says, "Judge, you ain't got jurisdiction," the court must stop what it is doing and determine the jurisdiction question before returning to anything else. Like the judge in Professor Dobie's hypothetical, this court in the present case is obligated to decide the jurisdiction question--even though it has first been made on appeal--before doing anything else
 
 
 [2]
 Section 8.01-244 states, in pertinent part:
 B. Every action under Sec. 8.01-50 shall be brought by the personal representative of the decedent within two years after the death of the injured person. If any such action is brought within such period of two years after such person's death and for any cause abates or is dismissed without determining the merits of such action, the time such action is pending shall not be counted as any part of such period of two years and another action may be brought within the remaining period of such two years as if such former action had not been instituted.
 
 
 [3]
 Section 8.01-50 states, in pertinent part:
 A. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, ... and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, ... and to recover damages in respect thereof, then, and in every such case, the person who, or corporation ... which, would have been liable, if death had not ensued, shall be liable to an action for damages, ... notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances, as amount in law to afelony.
 B. Every such action under this section shall be brought by and in the name of the personal representative of such deceased person within the time limits specified in Sec. 8.01-244.
 
 
 [4]
 Section 8.01-229 reads, in pertinent part:
 E. Dismissal, abatement, or nonsuit.
 * * *
 
 
 [3]
 If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or a state court and recommenced in any other court
 
 
 [5]
 Section 8.01-235 states:
 Bar of expiration of limitation period raised only as affirmative defense in responsive pleading.
 The objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading. No statutory limitation period shall have jurisdictional effects and the defense that the statutory limitation period has expired cannot be set up by demurrer. This section shall apply to all limitation periods, without regard to whether or not the statute prescribing such limitation period shall create a new right.
 
 
 [6]
 The court in Branch explained:
 The very right itself is provided by the statute and the statute which creates the right prescribes a special limitation upon the right--the time within which the right can be exercised. The statute which confers the right fixes the period within which the right may be enforced, the limitation is of the right as well as of the remedy. It is not a pure statute of limitations--one affecting the remedy only."
 
 
 [172]
 Va. at 416, 2 S.E.2d at 328 (emphasis added)