COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


ARISTOTELIS PRAMAGIOULIS

                                                    MEMORANDUM OPINION*
v.        Record No. 1437-10-2                           PER CURIAM
                                                       JANUARY 25, 2011
CYNTHIA L. PRAMAGIOULIS


                    FROM THE CIRCUIT COURT OF HENRICO COUNTY
                               Gary A. Hicks, Judge

            (Christopher H. Macturk; Brandy M. Poss; Barnes & Diehl, PC, on
            briefs), for appellant.

            (Larry A. Pochucha; Bowen, Champlin, Foreman & Rockecharlie,
            on brief), for appellee.


        Aristotelis Pramagioulis (husband) appeals from a final decree of divorce. Husband argues

that the trial court erred by (1) granting Cynthia L. Pramagioulis' (wife) motion to rescind the

parties' property settlement agreement dated February 25, 2008 (PSA); (2) finding wife's testimony

concerning the signing of the PSA unrebutted; (3) finding wife was unwittingly agreeable to signing

away her rights because she relied to her detriment on what husband and his prior attorney told her;

(4) finding that there was no clear understanding of the nature and consequences of wife signing the

PSA; (5) finding husband was equitably estopped by his conduct and statements to wife causing

wife to rely on them to her detriment; (6) finding that the PSA did not provide a fair and reasonable

disclosure of the property or financial obligations to wife in violation of Code § 20-151; (7) finding

wife was dutiful, loyal, and committed to the marital relationship in making its award of spousal

support and not considering ample evidence to the contrary in determining whether to award

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

spousal support pursuant to Code § 20-107.1(E); (8) awarding rehabilitative spousal support to wife; (9) awarding rehabilitative spousal support in the amount of $900 per month; (10) awarding rehabilitative spousal support to wife for twenty years; and (11) denying husband's motion to reconsider spousal support and the relief requested therein. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted).

The parties married on June 15, 1999, separated on May 31, 2007, and divorced on June 9, 2010. On February 25, 2008, the parties signed the PSA, which was prepared by husband's attorney. Wife was not represented by an attorney at the time. Wife thought that the sole purpose in signing the PSA was for husband to acquire a bond for his company, Empire Painting. Under the terms of the PSA, wife received no marital property and waived her right to spousal support. When the agreement was signed, husband and his attorney told wife that husband would provide for her, but husband stopped supporting her several months after the PSA was signed.

On May 21, 2008, wife filed a complaint for divorce and asked the trial court to rescind the PSA. Husband filed an answer and counterclaim. After a hearing on the matter, the trial court rescinded the PSA, over husband's objections, and scheduled a final hearing to resolve the issues of equitable distribution, spousal support, and attorney's fees. The parties presented evidence and argument at the final hearing, and on April 14, 2010, the trial court issued its letter opinion, in which it awarded wife $900 per month for twenty years in rehabilitative spousal

support, and divided the parties' marital property, including husband's business. Husband filed a motion to reconsider, which the trial court denied. The trial court entered the final decree on June 9, 2010. This appeal followed.

ANALYSIS

Issues 1 – 6: Rescission of PSA

A.

Husband argued that the trial court erred in granting wife's motion to rescind the PSA.

> "Marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) (citation omitted); Derby v. Derby, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989). Therefore, in this case, wife "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989).

Galloway v. Galloway, 47 Va. App. 83, 91, 622 S.E.2d 267, 271 (2005).

The evidence proved that wife suffers from anxiety-panic disorder with agoraphobia, major depression with severe psychotic features, and bipolar disorder. Wife has been under psychiatric and psychological care since she was a teenager. Because of her mental condition, she gives more credibility to others than she does herself and can be very gullible. Her counselor testified that "because she thinks so highly of what other people think of her, she is more concerned about how they feel towards her and doubts herself than making the correct decision that is good and healthy for her." Since approximately 2003, she has been on permanent disability from work. At the time of the trial, wife was forty-five years old and had a ninth grade education.

Husband started a painting business in 2004. At the time of the trial, husband was thirty-eight years old and in good physical and mental condition.

- 3 -

In March 2007, husband became enraged at wife and destroyed several household items. He told her to leave the marital residence, and she later did. She left with her dog and her clothing. Since she left the home until February 2008, the parties continued to see each other on a daily basis. Wife helped husband with his business, and they continued to have sexual relations. She hoped that they would reconcile and live together again.

In early 2008, husband's business needed a bonding agreement in order to be eligible for additional lucrative work. Wife initially refused to sign a bonding agreement for the company. As a result, they determined that husband's business could obtain the bonding agreement if they had a property settlement agreement. Wife testified that husband told her that if she "didn't sign the separation papers, he wouldn't continue to help [her] with [her] monthly bills but that if [she] signed the separation papers, he would continue to help [her]." Husband contacted his attorney, Theodore Galanides, and asked him to draft a property settlement agreement. On February 25, 2008, the parties went to Galanides' office to sign the PSA. Galanides explained to wife that he represented husband only. Wife was not represented by counsel. The parties had not discussed the division of property, and wife was not provided with an itemized list of property or debts. The meeting at Galanides' office was the first opportunity for wife to see the agreement. Galanides read the majority of the agreement to the parties and asked if they understood it. Wife testified that when she was at Galanides' office, she was "under the assumption that [she] was signing separation papers for [her] husband to be able to be bonded." Wife asked about spousal support. Galanides and husband told wife that husband would support her, even though it was not in the agreement. Relying on their assurances that husband would continue to support her, wife signed the PSA on February 25, 2008. On February 26, 2008, wife discovered that husband had a girlfriend, and she stopped seeing husband and helping him with his business. Husband paid support to wife for several months after signing the PSA, but then stopped doing so.

During the course of the litigation, wife challenged the validity of the PSA, and the trial court granted her motion to rescind the PSA. Husband now argues that the trial court erred in granting her motion. Husband contends the PSA was not unconscionable.

There is a two-step test that courts must apply in determining whether an agreement is unconscionable: "1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences." Id. at 92, 622 S.E.2d at 271 (citations omitted).

The PSA did not provide any award of marital property to wife, nor did she receive any spousal support, despite her physical and mental condition. On the other hand, husband received the marital assets, including his painting business and his Corvette. Accordingly, there was a gross disparity in the division of the assets.

In issuing its ruling, the trial court focused on wife's "fragile medical and mental condition" and her reliance on Galanides' and husband's statements that husband would support her. The trial court ruled, "While there were no overt threats, the signing was 'compromised' by [wife] relying on the statements of Mr. Galanides and [husband] to her detriment that she would continue to get assistance (despite the fact that no specific amount was mentioned)."

> "When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."

Derby, 8 Va. App. at 28-29, 378 S.E.2d at 79 (quoting Pomeroy, Equity Jurisprudence § 928 (5th ed. 1941)).

Here, the evidence supports the trial court's ruling that wife was "unwittingly agreeable" to signing the PSA to her detriment. Her counselor explained that she was easily influenced by others. Wife's main concern was support, and husband and Galanides assured her that husband

would support her, which was not the case. Husband told wife to go to Galanides' office to sign the agreement. Wife was not provided a copy of the agreement prior to the meeting, nor was she represented by counsel. She and husband did not discuss the division of property. Given her mental condition, she did not understand the legal ramifications of the agreement, especially when husband said that he would support her but did not provide for spousal support in the agreement. Husband's statements and actions were overreaching influences on wife.

Husband also asserts that the trial court erred in finding that wife did not have a clear understanding of the nature and consequences of the PSA. Again, the evidence supports the trial court's finding because wife asked several questions about support prior to signing the PSA. She did not understand that the PSA did not provide for support and husband would be under no obligation to support her. She relied on the statements that husband would support her, and her mental condition left her subject to others' control over her. The trial court quoted the counselor's statement, "'that last influence will be the strongest for her.'" Husband was aware of her mental condition, and made promises to her that he would not keep so that she would sign the PSA.

Accordingly, the trial court did not err in rescinding the PSA given the gross disparity in the division of the assets and the overreaching influences used to ensure that wife signed the PSA.

B.

Husband argues that the trial court erred in finding wife's testimony concerning the signing of the PSA unrebutted.

Husband did not comply with Rule 5A:20(e) because his opening brief does not contain any principles of law or citation to legal authorities to fully develop his argument. Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App.

53, 56, 415 S.E.2d 237, 239 (1992). We find that husband's failure to comply with Rule

5A:20(e) is significant, so we will not consider this issue. See Fadness v. Fadness, 52 Va. App.

833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was

their duty to present that error to us with legal authority to support their contention.").

C.

Husband argues that the trial court erred in finding that he was equitably estopped by his

conduct and statements to wife causing her to rely on them to her detriment.

> Estoppel is the doctrine by which a "party is prevented by his own
> acts from claiming a right to [the] detriment of [the] other party
> who was entitled to rely on such conduct and has acted
> accordingly." Black's Law Dictionary 551 (6th ed. 1990); see also
> American Mutual Liab. Ins. Co. v. Hamilton, 145 Va. 391, 407,
> 135 S.E. 21, 25 (1926). "The elements necessary to establish
> equitable estoppel are (1) a representation, (2) reliance, (3) change
> of position, and (4) detriment, and the party who relies upon
> estoppel must prove each element by clear, precise, and
> unequivocal evidence. Because the doctrine of estoppel prevents
> the showing of the truth, it is applied rarely and only from
> necessity." Princess Anne Hills v. Susan Constant Real Estate,
> 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992) (citations omitted).

Webb v. Webb, 16 Va. App. 486, 494-95, 431 S.E.2d 55, 61 (1993).

Wife thought that the purpose of the PSA was to enable husband to receive a bonding

agreement for his business. Wife was concerned about support, since she could not work and did

not have sufficient funds to meet her basic expenses, including rent, food, and medicine. She

relied on husband to help her with her monthly bills. Husband promised that he would continue

to support her, and Galanides told wife that she could rely on husband's word. Wife relied on

these statements and signed the PSA. A few months after the PSA was signed, husband stopped

paying support and said that he could not afford it. Therefore, wife proved the elements of

estoppel, and the trial court did not err.

D.

Husband also contends the trial court erred in finding that the PSA did not provide a fair and reasonable disclosure of the property in violation of Code § 20-151.

> Pursuant to the Premarital Agreement Act, a premarital agreement is not enforceable if, in addition to being found unconscionable when it was executed, the individual challenging its enforceability establishes either (1) she did not execute the agreement voluntarily, or (2) she was not provided "a fair and reasonable disclosure of the property or financial obligations of the other party; and did not voluntarily and expressly waive, in writing, any right to disclosure of the property." Code § 20-151(A).

Chaplain v. Chaplain, 54 Va. App. 762, 776, 682 S.E.2d 108, 115 (2009).[1]

Wife did not waive her right to disclosure of the property. The PSA does not include a waiver to disclosure; instead, the PSA states, "Each party assures the other that full disclosure has been made to the other of any assets he or she has any interest in now or at the time of this separation in lieu of formal discovery." However, the evidence proved that husband did not provide a disclosure of the parties' assets or obligations to wife.

Husband argues that wife had access to the parties' financial information because she helped husband with his business. Her assistance with his business does not negate husband's responsibility to disclose the assets.

The trial court did not err in finding that there was no disclosure of the assets in violation of Code § 20-151.

Issues 7 – 11: Rehabilitative Spousal Support

A.

Husband argues that the trial court erred in awarding rehabilitative spousal support to wife in the amount of $900 per month for twenty years.

---

[1] Pursuant to Code § 20-155, the Premarital Agreement Act applies to postnuptial agreements as well as premarital agreements.

A trial court has broad discretion in awarding spousal support, and its ruling will not be overturned unless there is an abuse of discretion. Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998) (citations omitted).

The trial court considered the factors in Code § 20-107.1(E) in determining its spousal support award. The trial court noted the parties' contributions to the marriage, including their work together at Empire Painting and wife's assistance with the business' paperwork while husband was on jobs. Wife continued in this role after husband asked her to leave the marital residence. The trial court mentioned the fact that wife is disabled. The trial court also commented on the fact that wife had grown accustomed to the parties' standard of living during the marriage.

Husband contends the trial court's award of $900 per month exceeds the amount that he is able to pay because he actually has a monthly deficit. The trial court had the opportunity to consider husband's income and expense statement, which included expenses for his newborn child and his girlfriend.

The trial court also considered wife's income and expenses. Wife's only source of income was her social security disability payment. She relied on her brother to help her meet her living expenses. Despite her modest lifestyle, her income and expense statement showed a deficit of $1,210 per month.

The trial court found that husband had the ability to pay support and wife had the need for support. The trial court did not abuse its discretion in awarding wife $900 per month.

Husband also contends the trial court erred in awarding wife support for twenty years, or more than twice the length of the marriage. Husband asserts that the purpose of rehabilitative spousal support was to enable a spouse to increase her earning capacity, and wife has the capability of doing office work since she helped with husband's business. See Peter N. Swisher,

Lawrence D. Diehl, and James R. Cottrell, Family Law: Theory, Practice, and Forms § 9.7, at 301 (2009). Wife, though, is permanently disabled and unable to work. Given wife's mental condition and earning capacity, the trial court did not err in setting the duration for the spousal support at twenty years.

B.

In issuing its spousal support ruling, the trial court found wife's testimony to be credible and found her to be "dutiful, loyal and committed to the marital relationship." Husband contends the trial court erred in making this finding. Husband argues that there was evidence to show that wife's behavior contributed to the dissolution of the marriage.

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

The trial court accepted wife's testimony as credible, and there was evidence to support its conclusion that wife was "dutiful, loyal and committed to the marital relationship." Wife assisted husband with his painting business, even after he forced her out of the marital residence. She continued to hope for reconciliation until she discovered, after she signed the PSA, that husband had a girlfriend. Accordingly, the trial court did not err in stating that wife was "dutiful, loyal and committed to the marital relationship."

C.

Husband argues that the trial court erred in denying his motion to reconsider spousal support and the relief requested therein. Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Husband failed to comply with Rule 5A:20(e) because he

did not cite to any legal authorities to support his argument. This Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239. We find that husband's failure to comply with Rule 5A:20(e) is significant, so we will not consider this issue. See Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

## Attorney's Fees and Costs

Both parties have requested an award of attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that wife is entitled to a reasonable amount of attorney's fees and costs, and we remand for the trial court to set a reasonable award of attorney's fees and costs incurred by wife in this appeal.

Since wife prevailed in this appeal, we deny husband's request for attorney's fees and costs. Rogers v. Rogers, 51 Va. App. 261, 274, 656 S.E.2d 436, 442 (2008).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27. We remand this case to the trial court for determination and award of the appropriate appellate attorney's fees and costs.

Affirmed and remanded.